
IN THE UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF TEXAS
BEAUMONT DIVISION

| | | |
|---|---|---|
| IN RE: | § | |
| | § | |
| **LAQUINTA INN & SUITES** | § | Case No. 15-10326 |
| **PARTNERSHIP** | § | |
| xx-xxx5502 | § | |
| 1700 S. Wheeler, Jasper, TX 75951 | § | |
| | § | |
| Debtor | § | Chapter 11 |

## INTERIM ORDER REGARDING CONFIRMATION OF DEBTOR'S SECOND AMENDED PLAN OF REORGANIZATION

The Court has heard and considered the confirmation of the Second Amended Plan of Reorganization (the "Plan") filed by the Debtor, LaQuinta Inn & Suites Partnership (the "Debtor"). At the confirmation hearing, the evidence established that all outstanding objections to the confirmation of the Plan had been satisfied or withdrawn and that the Plan had satisfied most of the applicable confirmation standards under § 1129(a) of the Bankruptcy Code. As demonstrated by the ballot summary admitted at the hearing as Exhibit 1, the Debtor admittedly failed to show that all impaired classes had accepted the plan as required by § 1129(a)(8) of the Bankruptcy Code. The Debtor thereafter sought to invoke the cramdown procedures outlined in § 1129(b) of the Bankruptcy Code because there was at least one impaired class voting affirmatively for the Plan.

However, the Court raised certain concerns *sua sponte* at the hearing regarding the propriety of certain exculpation, release and injunction provisions as contained in Article VII of the Plan. Such concerns implicate § 1129(a)(1) which requires that the plan

comply with the applicable provisions of Title 11, as well as the Debtor's duty as the plan proponent to propose a plan "in good faith and not by any means forbidden by law" pursuant to § 1129(a)(3). It is widely recognized that bankruptcy courts have an independent duty to ensure that a plan of reorganization meets all of the requirements of confirmation, even in the absence of an objection by a party in interest. *In re Divine Ripe, L.L.C.*, 554 B.R. 395, 410 (Bankr. S.D. Tex. 2016); *In re Cypresswood Land Partners, I*, 409 B.R. 396, 421 (Bankr. S.D. Tex. 2009).

Section 7.1 of the proposed Plan seeks to invoke exculpation protections for certain designated parties.[1] Such parties would be:

> released from any Claim, cause of action, or liability to any other Exculpated Party, to any Interest Holder, or to any other party-in-interest, for any act or omission that occurred during and in connection with the Debtor's Case or in connection with the preparation and filing of the Debtor's case, the formation, negotiation, and/or pursuit of confirmation of the Plan, the consummation of the Plan, consummation of the Sale, and/or the administration of the Plan, and/or the property to be distributed under the Plan, except for Claims, causes of action or liabilities arising from the gross negligence, willful misconduct, fraud, or breach of the fiduciary duty of loyalty of any Exculpated Party, in each case subject to determination of such by Final Order of a court of competent jurisdiction and provided that any Exculpated Party shall be entitled to reasonably rely upon the advice of counsel with respects to its duties and responsibilities (if any) under the Plan and Sale Documents.[2]

---

[1] Plan ¶ 1.1(t) defines the "Exculpated Parties" as "[E]ach of the Debtor's partners, employees, professionals and agents; and the Reorganized Debtor's officers, directors, employees, professionals and agents."

[2] Plan ¶ 7.1.

As proscribed by *Bank of N.Y. Trust Co., N.A. v. Official Unsecured Creditors' Comm. (In re Pacific Lumber Co.)*, 584 F.3d 229, 252-53 (5th Cir. 2009), ¶ 7.1 improperly proposes that the Exculpated Parties be immunized from any negligence claims arising from their actions or omissions during the course of the bankruptcy case, including their acts or omissions in pursuing the confirmation of the proposed plan.  In *Pacific Lumber*, the Fifth Circuit stated that there is "little equitable about protecting the released non-debtors from negligence suits arising out of the reorganization." *Id.* at 252.  It thus rejected the more lenient approach that other circuits have taken in this regard.  Explaining further, the Circuit stated that

> [T]he essential function of the exculpation clause proposed here is to absolve the released parties from any negligent conduct that occurred during the course of the bankruptcy.  The fresh start § 524(e) provides to debtors is not intended to serve this purpose.

*Id*. at 252-53.  While *Pacific Lumber* admittedly involved the litigation of an objection to the proposed exculpation provision, the Fifth Circuit recognized that such a proposed provision triggers "a court's duty to protect the integrity of the [bankruptcy] process." *Id.*  Thus, even in the absence of an objection, the Court has a duty to scrutinize these provisions.  While the Debtor (or its general partners) argue that the purpose of ¶ 7.1 is to mirror the protections offered by § 1125(e) of the Bankruptcy Code,[3] if such were the

---

[3] Section 1125(e) of the Bankruptcy Code states:

> A person that solicits acceptance or rejection of a plan, in good faith and in compliance with the applicable provisions of this title, or that participates, in good faith and in compliance with the applicable provisions of this title, in the offer, issuance, sale, or purchase of a

**Page 3**

case, then the parties would already be protected and the inclusion of ¶ 7.1 would be superfluous. The actual scope of ¶ 7.1 is considerably broader that the activities which the safe harbor of § 1125(e) supplies and the Debtor has failed to offer sufficient evidence to justify the need for this broader exculpation clause. Therefore, approval of the inclusion of ¶ 7.1 is denied.

Section 7.2 of the proposed Plan invokes a comprehensive release by the Debtor to the Shreem Corporation,[4] which is the new corporate entity formed by the Debtor's general partners, Hiral Patel and Ramesh Patel, to operate the hotel in the post-confirmation period. Though described as an attempt to shield the new corporate entity from successor liability issues, the Debtor offered no proof as to the existence of any potential claim for which this protection would be necessary. Indeed, the partners' counsel conceded at the hearing that the inclusion of this provision was likely "overkill." In light of the Debtor's failure to offer sufficient, if any, evidence to justify the need for this release of the new corporate entity owned by the Debtor's partners, approval of the inclusion of ¶ 7.2 is denied.

Section 7.3 of the proposed Plan also purportedly seeks to address unidentified successor liability claims by providing a comprehensive release of both the Debtor and

---

security, offered or sold under the plan, of the debtor, of an affiliate participating in a joint plan with the debtor, or of a newly organized successor to the debtor under the plan, is not liable, on account of such solicitation or participation, for violation of any applicable law, rule, or regulation governing solicitation of acceptance
or rejection of a plan or the offer, issuance, sale, or purchase of securities.

[4] Shreem Corporation is defined in the Plan as the "Reorganized Debtor" as of the Effective Date.

the Shreem Corporation by all creditors and interest holders, excepting for those obligations specified by the Plan and the Confirmation Order.  As a tool to protect the Debtor, the Debtor's release from obligations is defined by its discharge under the terms of the Bankruptcy Code and does not require supplementation.  As a tool to shield Shreem Corporation from successor liability issues, this is not a transaction involving a non-affiliated third-party purchaser.  It is instead a matter of the Debtor's principals seeking to forego general partner liability and to obtain the greater protections arising from the utilization of a new corporate form.  The intended transformation is not necessarily inappropriate, but it is clearly being pursued for the benefit of the Debtor's principals.  In light of the protective nature of Texas law on successor liability in general,[5] and the ability of the Debtor to insert a simpler, prophylactic provision that specifically identifies which obligations are being expressly assumed by the Corporation, and in the further light of the Debtor's failure to offer sufficient, if any, evidence that any such risks actually exist in this context or that otherwise justify the need for this comprehensive release, approval of the inclusion of ¶ 7.3 is denied.

Section 7.4 of the Plan seeks to grant a release to the Debtor's general partners, Hiral Patel and Ramesh Patel, from all liabilities which those non-debtor individuals might owe to any creditor of the partnership estate, particularly arising from the Debtor's general partnership status; provided, however, that the liabilities which those non-debtor

---

[5] *See, e.g., E-Quest Mgmt., LLC v. Shaw*, 433 S.W.3d 18, 23 (Tex. App.—Houston [1st Dist.] 2013, pet. denied) and cases cited therein [noting that Texas "strongly embraces" a "nonliability" rule for corporate successors].

individuals have guaranteed or otherwise owe to two particular creditors — First Bank & Trust – East Texas and to LaQuinta Franchising, LLC — will not be released. Specifically, ¶ 7.4 states that the individual general partners:

> shall not have or incur any liability to any person for any claim, objection, right, cause of action or liability, whether known or unknown, existing or hereafter arising, based in whole or in part on any act or omission, transaction, or occurrence from the beginning of time through the Effective Date in any way relating to the Debtor, its Bankruptcy Case or the Plan . . . . Hiral Patel and Ramesh Patel shall be released from any and all contractual liability (via guaranty or otherwise) and any and all statutory liability to any person based on Texas partnership law, including, but not limited to (a) the Small Business Administration or any successor thereto and (b) any and all creditors holding a pre-petition unsecured or undersecured claim against the Debtor.[6]

This provision, as currently presented to the Court, is accurately characterized as a global, nonconsensual release of a non-debtor — a type of release that is expressly forbidden within the confines of the Fifth Circuit. As one court has described the strength of this prohibition:

> The Fifth Circuit takes a very restrictive approach to non-debtor releases in bankruptcy cases. Quoting the most recent case from the Fifth Circuit on

---

[6] Plan ¶ 7.4. It must be noted that this release of the non-debtor partners is inapplicable to two of the largest creditors, First Bank & Trust – East Texas and LaQuinta Franchising, LLC. The selective targeting which this provision invokes is particularly troublesome to the Court, especially in light of the fact that SBA, as an undersecured second lienholder, will likely receive only its $25,718.75 Class 5 secured claim and only a 2-3% distribution on its allowed unsecured claim of over $1.8 million. All other affected parties which would be subjected to the release hold only nominal unsecured claims with no executed guaranty agreement and little motivation to pursue the partners on a general partner liability theory.

> this subject: non-consensual, non-debtor releases in bankruptcy proceedings in this circuit have been "explicitly prohibited," this circuit has "firmly pronounced its opposition to such releases," and the "Bankruptcy Code precludes non-consensual, non-debtor releases."

*In re Patriot Place, Ltd.,* 486 B.R. 773, 822 (Bankr. W.D. Tex. 2013) (quoting *Ad Hoc Group of Vitro Noteholders v. Vitro S.A.B. de C.V.* (*In re Vitro S.A.B. de CV)*, 701 F.3d 1031, 1051-53, 1054-55, 1058-59 (5th Cir. 2012)). "Code § 524(e) and applicable precedent do not allow the court to protect third parties from liability for debts on which they are liable with a debtor." *In re Pilgrim's Pride Corp.*, 2010 WL 200000, at *4 (Bankr. N.D. Tex. Jan. 14, 2010); *In re Bigler, LP*, 442 B.R. 537, 543 (Bankr. S.D. Tex. 2010) ["The Fifth Circuit's language restricting non-debtor releases is strong, and, with the exception of a provision for limited releases for committees, does not hedge on its limitation of non-debtor releases"].

The citations tendered by the Debtor in the post-hearing period do not state otherwise and they do not support the Debtor's contentions. Those cited decisions, in fact, are based upon factual scenarios in which a plan was confirmed by a bankruptcy court and then went unchallenged on direct appeal. The cited cases do not support the concept that a bankruptcy court has general authority to release claims against a non-debtor. They instead are *res judicata* cases; they hold that the principles of *res judicata* apply to confirmed plans which go unchallenged on direct appeal, but are later subjected

to an improper collateral attack.[7] Indeed, in the most prominent case cited by the Debtor, *Republic Supply Co. v. Shoaf*, 815 F.2d 1046 (5th Cir. 1987), the Fifth Circuit specifically affirmed that its decision to uphold the non-debtor release provision was mandated on *res judicata* grounds "regardless of whether that provision is inconsistent with the bankruptcy laws or within the authority of the bankruptcy court." *Id.* at 1050. Such *res judicata* decisions, which affirm on finality grounds otherwise objectionable propositions of bankruptcy law, illustrate the necessity of bankruptcy courts fulfilling their gatekeeper function by ensuring that a proposed plan complies with the requirements of the Bankruptcy Code and by preventing such legal improprieties from gaining a safe harbor on *res judicata* grounds.[8]

The Debtor further contends that the foregoing Fifth Circuit prohibitions are inapplicable because the proposed release, particularly as it affects the guaranty claims of the Small Business Administration ("SBA"), is consensual. The Debtor contends that such consent is evidenced by the SBA's failure to tender a ballot regarding the plan's provisions and by failing to file any objection to confirmation of the plan as proposed. While such an concept would be appropriate in a confirmation context for the restructuring of the relationship between a Chapter 11 debtor and one of its creditors, such implied consent, which arises solely from the balloting and confirmation procedures

---

[7] The Fifth Circuit has affirmed this distinction. *Pacific Lumber,* 584 F.3d at 252 n.27.

[8] *See generally* the oft-cited dicta in *United Student Aid Funds, Inc. v. Espinosa*, 559 U.S. 260, 270 (2010).

**Page 8**

outlined in the Bankruptcy Code, should not govern the restructuring (or destruction) of a contractual relationship between a creditor and a *non-debtor*, even when incorporated into the terms of a proposed plan.

At the very least, given the strict proscriptions governing this area in this circuit, such consent to the release of a non-debtor in a Chapter 11 plan context should be express and explicit. *In re Washington Mutual, Inc.*, 442 B.R. 314, 355 (Bankr. D. Del. 2011) [rejecting an opt-out mechanism and concluding that "[F]ailing to return a ballot is not a sufficient manifestation of consent to a third party release"]; *In re Neogenix Oncology, Inc.*, 508 B.R. 345, 361 (Bankr. D. Md. 2014) [requiring, at a minimum, "adequate notice on the voting ballot that the releasing parties were giving a release and that their abstention from voting would constitute their consent"]. In this instance, there was no express consent or affirmation by any creditor to the release of the non-debtor general partners. There was no particularized notice of those unusual provisions. Though not generally sufficient in this Court's estimation, there was not even an opt-out mechanism offered or utilized in this context. The Debtor's failure to evidence the informed, affirmative election of affected creditors to restructure their relationships with non-debtor entities through the Chapter 11 plan process mandates that the approval of the proposed release of the non-debtor individual general partners of this partnership debtor, as outlined in ¶ 7.4, be denied.

For virtually the same reasons, the permanent injunction the proposed Plan seeks to invoke under ¶ 7.5 cannot be granted. Section 7.5, in relevant part, provides:

> all Creditors . . . are permanently restrained, barred and enjoined from taking any of the following actions against the Debtor, its Partners, the Estate, the Reorganized Debtor or any of their property, including the Transferred Assets, on account of any Claim or Interest: (a) commencing or continuing in any manner any action or other proceeding of any kind; (b) enforcing, attaching, collecting, or recovering by any manner or means any judgment, award, decree, or order; (c) creating, perfecting, or enforcing any encumbrance or Lien of any kind; . . . (e) performing any act, in any manner, in any place whatsoever, that does not conform to or comply with the provisions of the Plan; . . . . The foregoing injunction shall extend to the Debtor, its Partners, the Estate and the Reorganized Debtor, their respective affiliates, officers, directors, employees, agents, attorney, and advisors and their respective property and interests in property. . . .[9]

The same rationales which have led the Fifth Circuit to prohibit global, nonconsensual releases of non-debtors also apply to the attempt by the Debtor to impose a permanent injunction to protect its non-debtor partners from post-confirmation litigation to collect an otherwise legitimate indebtedness. *Feld v. Zale Corp. (In re Zale Corp.)*, 62 F.3d 746, 760 (5th Cir. 1995) ["Accordingly, we must overturn a § 105 injunction if it effectively discharges a nondebtor"]. "The Fifth Circuit has held that post-confirmation *permanent injunctions* that effectively release a non-debtor from liability are prohibited." *In re Bernhard Steiner Pianos USA, Inc.*, 292 B.R. 109, 116 (Bankr. N.D. Tex. 2002) (emphasis in original) (citing *Zale*, 62 F.3d at 761). Additionally, such permanent injunctive relief is prohibited because the powers authorized under § 105 of the

---

[9] Plan ¶ 7.5.

Bankruptcy Code cannot be exercised in a manner that contradicts the specific ban on third-party discharges contained in § 524. As stated in *American Hardwoods, Inc. v. Deutsche Credit Corp. (In re American Hardwoods, Inc.)*, 885 F.2d 621 (9th Cir. 1989), and effectively adopted by the Fifth Circuit in *Zale:*

> 11 U.S.C. § 524(a)(2), however, describes the effect of a discharge "as an injunction against the commencement or continuation of an action, the employment of process, or an act, to collect, recover or offset any such debt as a personal liability of the debtor, whether or not discharge of such debt is waived." We find [the debtor's] semantic distinction between a permanent injunction and a discharge unpersuasive. A discharge under section 524(a)(2) does not void *ab initio* a liability. Rather, section 524 constructs a legal bar to its recovery. A discharge is in effect a special type of permanent injunction. [The debtor] seeks the same. The permanent injunction requested by [the debtor] falls squarely within the definition of a discharge under section 524(a)(2). [The debtor] requests "an injunction against ... an action ... to collect ... [a] debt." We therefore conclude that the specific provisions of section 524 displace the court's equitable powers under section 105 to order the permanent relief sought by [the debtor].

885 F.2d at 626, as modified in *In re Seatco, Inc*., 257 B.R. 469, 473 (Bankr. N.D. Tex. 2001). The Court acknowledges that, as with non-debtor releases, permanent injunctions are permissible within this circuit so long as the party to be enjoined consents to its entry. However, as with non-debtor releases, such consent to an injunction in favor of a non-debtor in a Chapter 11 plan context should be express and explicit based upon detailed notice. The evidence tendered by the Debtor at the confirmation hearing regarding notice

and consent fell far short of that standard.[10]  Thus, because post-confirmation permanent injunctions imposed without informed consent for the protection of non-debtors is expressly prohibited in this circuit, approval of the permanent injunction proposed in ¶ 7.5 of the Plan must be denied.

Because the evidence tendered at the confirmation hearing was otherwise sufficient to warrant confirmation of the plan and in light of the fact that the relief sought by the Debtor under the various paragraphs of proposed Article VII could possibly be approved upon an evidentiary demonstration of the express and explicit consent to such relief by each party affected thereby, the Court finds that just cause exists for entry of the following order to allow the Debtor to make an election as to the final disposition of proposed Article VII.

**IT IS THEREFORE ORDERED** that LaQuinta Inn and Suites Partnership, as the Plan Proponent, shall make the foregoing election of one of the following options by written submission with the Court **on or before Wednesday, December 7, 2016:**

(1)   to make no changes to Article VII of the proposed Plan at which time the Court would proceed to deny confirmation of the Plan as proposed;

---

[10]  The tendered evidence also fell far short of meeting the four prerequisites for obtaining any type of injunctive relief:  (1) a substantial likelihood that the movant will prevail on the merits; (2) a substantial threat that the movant will suffer irreparable injury if the injunction is not granted; (3) the threatened injury to the movant outweighs the threatened harm an injunction may cause the opponent; and (4) granting the preliminary injunction will not disserve the public interest. *Canal Auth. of the State of Fla. v. Callaway,* 489 F.2d 567, 572–73 (5th Cir. 1974).  The movant has the burden of persuasion on each of the elements of this four-prong test. *Apple Barrel Prods., Inc. v. Beard,* 730 F.2d 384, 389 (5th Cir. 1984); *see also In re Chiron Equities, LLC*, 552 B.R. 674, 697 (Bankr. S.D. Tex. 2016); *In re Bernhard Steiner Pianos USA, Inc*., 292 B.R. 109, 118 (Bankr. N.D. Tex. 2002).

(2)  to delete Article VII from the proposed Plan at which time the Court would proceed to confirm the proposed plan as modified, sans Article VII, based upon the evidence previously admitted at the confirmation hearing;

(3)  to file a modified Plan <u>SOLELY</u> as to the provisions of Article VII, thereby changing its provisions in some other manner, with such modification to occur:[11]

(a)  by the filing of a modified plan containing such changes to Article VII **on or before December 7, 2016**, *together* with the issuance of notice of the supplemental objection deadline and reset confirmation hearing as set forth below, to be given to the matrix as currently constituted by the Court on the date of filing;

(b)  all supplemental objections to the proposed changes to Article VII by any party-in-interest to be filed **on or before Wednesday, December 28, 2016;**[12] and

(c)  the confirmation hearing shall be reset for **Wednesday, January 4, 2017 at 1:30 p.m.** in the First Floor Courtroom of the United States Bankruptcy Court, Jack Brooks Federal Building, 300 Willow Street, in Beaumont, Texas, with the evidence reopened at that time solely for the purpose to consider issues pertaining to the filed modification of Article VII of the proposed Plan.

Signed on 11/18/2016

THE HONORABLE BILL PARKER
UNITED STATES BANKRUPTCY JUDGE

---

[11] This timeline was adopted only in order to provide the Debtor with the opportunity to proceed with confirmation at the earliest possible time in Beaumont. If additional time is needed, however, to meet the requirements which will be imposed upon the Debtor at that hearing, a motion to extend these deadlines would be appropriate.

[12] Given the limited scope of any possible modification to those issues raised by Article VII of the proposed Plan, the Court finds that just cause exists to shorten the objection period to the modification as designated.